**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————
:
BRIAN GRANT AND CHENEL GRANT,        :
MARTIN PRIBUSH AND DIANE PRIBUSH,    :
BENJAMIN M. COHAN, ROBERT PINTO AND :
BONNIE PINTO, LEONARD SCHONFELD,     :      Civil Action No. 09-2381 (JAG)
MORRIS SEAVEY, LARRY KALINER AND     :
LOIS KALINER, and all persons similarly situated,:      **OPINION**
:
:
          Plaintiffs,        :
:
          v.        :
:
DARRYL J. TURNER, ALLEN BERNSTEIN,   :
JACKIE BORK, ERICA DRAKE, ADAM       :
HAWK, CAROL SANDES-DRAKE, ROGER      :
WARREN, FIVE POINTS TRAVEL, DREAM    :
VACATIONS INTERNATIONAL, INC.,       :
DREAMWORKS VACATION CLUB,            :
VACATION TRAVEL CLUB, INC., BENTLEY  :
TRAVEL, BLUEGREEN VACATIONS CLUB,    :
INC., RESORTS CLUB INTERNATIONAL,    :
INC., AND JOHN DOES 1-100,           :
:
:
          Defendants.        :
———————————————————————:


**GREENAWAY, JR., U.S.C.J.**[1]

      This matter comes before this Court on motions to dismiss the plaintiffs' ("Plaintiffs'")

putative class action complaint for failure to state a claim upon which relief can be granted,

pursuant to Federal Rule of Civil Procedure 12(b)(6), by several groups of defendants

———————————————

      [1] Sitting by designation.

("Defendants").  Defendant Bluegreen Vacation Club (improperly identified in the complaint as Bluegreen Vacations Club) ("Bluegreen Club") moves to dismiss Plaintiffs' claims against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  In the alternative, Bluegreen Club also moves to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

Plaintiffs initiated suit, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., on behalf of themselves and purportedly on behalf of others similarly situated,[3] claiming that Defendants orchestrated an alleged scheme to fraudulently induce the purchase of lifetime memberships in "worthless" travel clubs.  Plaintiffs complain that the prospect of free travel rewards and discounts, paired with the immediate availability of credit card financing, induced Plaintiffs' purchases of "worthless" memberships.  The crux of Plaintiffs' complaint ("Complaint") is that the travel clubs failed to deliver the allegedly promised free travel rewards and substantial discounts on travel and other leisure activities.

The defendants include individuals and companies that allegedly sell the memberships (herein referred to as the "Travel Club Defendants"), and companies that allegedly aided such

---

[2]  This Opinion addresses five motions pending before this Court.  (Docket Entry Nos. 33, 41, 68, 70, and 74.)  To the extent that Plaintiffs refer generally to all of the defendants, except Bluegreen Club, in each claim, as "Defendants," this Court refers to the defendants, other than Bluegreen Club, as "Defendants," except where more specific references to the Defendants is warranted.  (Plaintiffs have not asserted a RICO claim against Bluegreen Club.)
      Plaintiffs' claims against Mastercard Incorporated were dismissed, without prejudice, by stipulation dated August 17, 2009.

[3]  Plaintiffs seek to represent individuals who "purchased or held one or more membership interests in one of the 'travel clubs' organized and/or promoted by [D]efendants" between January 1, 2006 and the date Plaintiffs filed the Complaint.  (Complaint ("Compl.") ¶ 29.)

purchases by permitting the use of well-known company names and/or providing credit card financing (herein referred to as the "Credit Card Defendants").[4]  Plaintiffs also allege state law claims based on this alleged fraudulent scheme against the Travel Club Defendants, the Credit Card Defendants, and Bluegreen Club.

Plaintiffs commenced the instant action on May 18, 2009.  In the Complaint, Plaintiffs assert the following causes of action against the defendants:  RICO, common law fraud, negligent misrepresentation, and imposition of a constructive trust.

For the reasons set forth below, Defendants' motions to dismiss Plaintiffs' Complaint for failure to state a claim are granted, without prejudice.  Defendant Bluegreen Club's motion to dismiss Plaintiffs' claims against it for failure to state a claim, and for lack of personal jurisdiction, is granted, without prejudice.  Plaintiffs' request for jurisdictional discovery is granted.[5]

## I.  BACKGROUND

The factual allegations of the Plaintiffs' Complaint are assumed to be true for the

---

[4]  In the Complaint, Plaintiffs confusingly refer to all of the Defendants as "defendants" and also refer to all of the Defendants, except Bluegreen Club, as the "RICO defendants." Plaintiffs have not taken the opportunity, during briefing on the motions, to provide any additional details to perhaps shed light on allegations that are, at best, vague and ambiguous.  See Maio v. Aetna, 221 F.3d 472, 485 (3d Cir. 2000) (A court "may use [a plaintiff's] brief to 'clarify allegations in the complaint whose meaning is unclear.'") (quoting Pegram v. Herdrich, 530 U.S. 211, 230 n.10 (2000)).  Plaintiffs fail to address Defendants individually.  For the purposes of discussing the factual circumstances in this case, this Court has found it helpful to divide the Defendants into two categories—the Travel Club Defendants and the Credit Card Defendant. This categorization appears warranted from the Plaintiffs' description of the roles of different sets of Defendants in the alleged fraudulent scheme.  Additionally, where Plaintiffs have not provided any factual allegations that one group of defendants engaged in certain activity, this Court has not attributed such conduct to that group of defendants.

[5]  RCI's motion for a more definite statement is denied as moot.

purposes of the instant motions.  The following facts are drawn from the Complaint and documents incorporated therein by reference.

**A.  Parties**[6]

This case involves the sale of lifetime memberships in allegedly fraudulent travel clubs. Plaintiffs are individuals, including several couples, who are residents of New Jersey, New York, and Pennsylvania, who purchased lifetime memberships in the travel clubs at issue.  Plaintiffs purchased a total of seven memberships.  (Compl. ¶¶ 11-17.)  Plaintiffs allege the date of the travel club membership purchase for each named Plaintiff and the cost of each such membership.[7]  (Id.)  Plaintiffs financed four of the memberships with a credit card Plaintiffs refer to as a "Bank of America [FIA Card Services] [or] RCI Mastercard" which Plaintiffs allege the Travel Club Defendants "issued" to Plaintiffs "at the time and place of the sale, expressly for the purpose of effectuating the transaction."  (Id. at ¶¶ 11-14.)

The Travel Club Defendants include:  Defendant Vacation Travel Club ("VT Club"), and the following individuals and business entities: Defendants Darryl Turner, Allen Bernstein, Jackie Bork, Five Points Travel, Dream Vacations International, Dreamworks Vacation Club, and Bentley Travel (referred to in the Complaint, collectively, as the "Turner et al. defendants").

---

[6] For the purposes of establishing venue, several individual defendants reside in New Jersey, and several entity defendants are also located in New Jersey.  (Compl. ¶¶ 20-22, 24, 27.)

[7] Plaintiffs Brian and Chenel Grant purchased a membership, on March 31, 2009, for $4,493.  Plaintiffs Martin and Diane Pribush purchased a membership, on February 19, 2009, for $4,493.  Plaintiff Benjamin M. Cohan purchased a membership, on March 10, 2009, for $5,995. Plaintiffs Robert and Bonnie Pinto purchased a membership, on November 22, 2008, for $3,963. Plaintiff Leonard Schonfeld purchased a membership, on November 22, 2008, for $4,463. Plaintiff Morris Seavey purchased a membership, on October 4, 2008, for $2,461.  Plaintiffs Larry and Lois Kaliner purchased a membership, on January 31, 2009, for $4,449.  (Id. at ¶¶ 11-17.)

The Complaint identifies the Turner et al. defendants (herein referred to as the "Turner Defendants") as the "ringleaders" of the alleged fraudulent scheme.  (Id. at ¶ 20.)

Defendant Turner owns Defendants Five Points Travel and Dreamworks Vacation Club. (Id. at ¶ 20.)  Defendant Bernstein "is a principal in one or more of the defendant business enterprises and/or corporate defendants."  (Id. at ¶21.)  Defendant Bork manages, or once managed, Defendant Five Points Travel, and is a principal in one or more of the travel clubs.  (Id. at ¶ 22 .)  Plaintiffs allege that Defendants Turner, Bork, and Bernstein established Defendants Five Points Travel and Bentley Travel.[8]  (Id. at ¶ 24.)

The Credit Card Defendants (referred to in the Complaint as the "corporate defendants") include:  Defendant RCI, LLC (improperly identified in the Complaint as Resorts Club International) ("RCI") and FIA Card Services (improperly identified in the Complaint as Bank of America).  FIA Card Services is a credit card issuer.  (Id. at ¶ 25.)  The Complaint alleges that FIA Card Services aided the scheme "by providing financing in the form of 'on the spot' credit cards at the time and place the 'travel club' memberships were sold."  (Id.)  RCI "is a nationwide marketer and promoter of interests in timeshares, and other travel and vacation interests."  (Id. at ¶ 27.)  Plaintiffs allege that RCI also aided the provision of credit card financing.  (Id.)

Plaintiffs aver that Bluegreen Club is a Florida-based entity.  (Id. at ¶ 23.)  Plaintiffs claim that Bluegreen Club licenses its alleged trademark to be used on credit cards made available at the Travel Club Defendants' sales presentations.  (Id.)

---

[8]  The remaining named defendants are the officers and directors of Dreamworks Vacations International:  Erica Drake, Adam Hawk, Carol Sandes-Drake, and Roger Warren. (Compl. at ¶ 19.)

5

**B.  The Fraudulent Scheme**

Plaintiffs claim that the Travel Club Defendants represented that Plaintiffs would receive free travel rewards and substantial discounts on travel and leisure activities if they purchased lifetime travel club memberships.  Despite these representations, the free rewards and discounts never materialized.  Plaintiffs further insist that the seeming involvement of legitimate businesses, namely, the Credit Card Defendants (by providing credit card financing) enabled the fraudulent scheme.  (Id. at ¶ 39.)

**Travel Club Defendants**

Plaintiffs' principal allegation is that the Travel Club Defendants engaged in the "fraudulent sale of memberships in the various 'travel clubs' referred to [in the Complaint] . . . with the false promise that purchase of [travel club] membership interests would provide [] ongoing access to discounts on travel-related services and other travel-related benefits not otherwise available to members of the public at large, . . . [; and the Travel Club Defendants] fail[ed] to reveal that they had *neither the intention nor the capacity* to fulfill the stated objectives of [the] memberships."  (Id. at ¶ 46 (emphasis added).)

Plaintiffs assert that "[n]one of the [P]laintiffs have received free airline tickets or free hotel accommodations, despite attending [D]efendants' sales presentations and purchasing one or more memberships in [D]efendants' travel clubs.  None of the [P]laintiffs have enjoyed the discounts that [Travel Club Defendants] promised on any travel-related services."  (Plaintiffs' Brief in Opposition to the Turner Defendants' Motion to Dismiss 2.)

Plaintiffs specifically allege that they received promotional mailings from the Travel Club Defendants that referred to offers for free travel rewards.  (Compl. ¶ 37.)  Plaintiffs allege that the

Travel Club Defendants aimed to deceive Plaintiffs into believing that the mailings "originated from an official government agency" by using words such as, "Division of Revenue" and "Department of Funding."  (Id. at ¶ 37 Ex. A (promotional mailing).)

The mailings also provided Plaintiffs with a toll-free number to claim the promotional offer.  (Id.)  Upon calling the number indicated on their respective mailings, Plaintiffs were invited to attend a sales presentation in order to "claim their prize."  (Id.)

Each of the named Plaintiffs attended a scripted sales presentation.  (Id. at ¶ 18.)  These presentations, offered by unspecified Travel Club Defendants, "were either identical, or substantially similar, and [] all contained the material misrepresentations and omissions described [in the Complaint]."  (Id.)  The Travel Club Defendants used "virtually identical and/or substantially similar offering materials and standardized oral misrepresentations . . . ."  (Id. at ¶ 47.)

The Travel Club Defendants informed Plaintiffs, orally and in writing, that if they entered into a lifetime travel club membership agreement, Plaintiffs would receive free cruises, hotel stays, and all-inclusive vacations in Mexico, and other vacation destinations.  (Id. at ¶ 37.)  The Travel Club Defendants allegedly sold thousands of travel club memberships valued between $1,000 and $10,000.  (Id.  at ¶ 36.)

Plaintiffs allege that during the sales presentations, Travel Club Defendants represented that the offer would only be available during the day of the presentation (id. at ¶ 37), and that free travel rewards are available for those who sign-up for a travel club membership (id. at ¶ 38). Plaintiffs claim that the Travel Club Defendants did not disclose that, due to unspecified terms and conditions, Plaintiffs could not possibly obtain the promised free rewards on leisure activities

and goods.  (Id. at ¶ 38.)

Plaintiffs aver that "[P]laintiffs who have attemped to avail themselves of vacation packages offered by the [Travel Club Defendants] which seemed too good to be true have found them to be exactly that."  (Id. at ¶ 2.)  Plaintiffs allege that although Defendant Bork "and various employees under her supervision" create an appearance of legitimacy by answering phone calls from travel club members, the travel clubs never deliver on the promised substantial discounts on travel and leisure.  (See id. at ¶ 42.)

Plaintiffs insist that although the Travel Club Defendants have offices and maintain websites, the Travel Club Defendants are "incapable of delivering to [P]laintiffs and the [purported] class any discount or benefit that would not have otherwise been available to them had [Plaintiffs] foregone membership in the [Travel Club Defendants'] fraudulent 'travel clubs.'"  (Id.)

Plaintiffs also allege that the Travel Club Defendants would discontinue operation of the travel club in a certain location, and move the operation, or change the business name, after it became known in a particular area that the travel club memberships were fraudulent.  (Id.  at ¶ 43.)

**Credit Card Defendants**

Plaintiffs claim that the Credit Card Defendants "assist the fraud by the other defendants by lending an air of legitimacy to their operations and by financing the sale of memberships in their bogus 'travel clubs.'"  (Id. ¶ 39.)

According to Plaintiffs, the Credit Card Defendants permitted the Travel Club Defendants to offer Plaintiffs credit card financing "on-the-spot" and with interest-only payments for the first

six months.  (Id.)  The membership agreement one of the Plaintiffs entered into indicates that the total amount of the lifetime membership is automatically deducted, in annual payments, from the credit card.  (Id. Ex. B (membership agreement).)

Plaintiffs aver that the Credit Card Defendants—FIA Card Services and RCI "are aware of the fraud being perpetrated by the other defendants, yet they either choose to ignore or are recklessly indifferent to their activities."  (Id. at ¶ 3.)  Plaintiffs base this conclusion on the factual allegation that the Credit Card Defendants "continue[d] to cooperate" with the Travel Club Defendants "despite the numerous complaints they [the Credit Card Defendants] have received."  (Id. at ¶ 41.)  Plaintiffs also aver that "upon information and belief, [FIA Card Services'] entire dispute resolution process is part and parcel of [D]efendants' fraudulent enterprise, designed to frustrate and humiliate [D]efendants' victims and to discourage them from instituting legal action."  (Id.)

**Bluegreen Club**

Plaintiffs explain that Plaintiffs initiated this action against Bluegreen Club because Bluegreen Club's "trademark appears on the point-of-sale credit cards issued by [the Travel Club Defendants], at the sales presentations where plaintiffs bought their memberships in [D]efendants' fraudulent travel clubs."  (Plaintiffs' Letter, dated September 8, 2009, in Opposition to Bluegreen Club's Motion to Dismiss.)[9]

---

[9] On July 21, 2009, Bluegreen Club moved to dismiss the Complaint for lack of personal jurisdiction, and in the alternative, for failure to state a claim.  (Docket Entry No. 33.)

On the following day, July 22, 2009, the Travel Club Defendants filed their motion to dismiss.  (Docket Entry No. 41.)  On September 18, 2009, FIA Card Services filed its motion to dismiss.  (Docket Entry No. 68.)  RCI also filed its motion dismiss on September 18, 2009. (Docket Entry No. 70.)  RCI also moves, in the alternative, for a more definite statement, pursuant to Federal Rule of Civil Procedure 12(e).  (Id.)

9

## II.  JURISDICTION AND VENUE

This Court exercises federal jurisdiction over Plaintiffs' civil RICO claim, pursuant to 18 U.S.C. § 1962(c), and 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' remaining claims, asserted under state law, under 28 U.S.C. § 1367.  Venue is proper, pursuant to 28 U.S.C. § 1391(b).

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a claim for relief in any pleading for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [however,] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal citations omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they

---

VT Club filed its motion, on October 9, 2009, incorporating by reference the arguments put forth by the other defendants and also disclaiming liability for acts allegedly committed by Defendant Turner as an independent contractor for VT Club.  (Docket Entry No. 74.)

are no more than conclusions, are not entitled to the assumption of truth." Id.  A court must

"draw all reasonable inferences in [the non-movant's] favor." See Capogrosso v. Supreme Court

of N.J., 588 F.3d 180, 184 (3d Cir. 2009).

"When there are well-pleaded allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement of relief." Id.; Fowler v. UPMC

Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (articulating a two-part test applicable post-Iqbal

wherein factual and legal elements are separated and the district court determines whether a

plaintiff has shown a "plausible claim for relief").

A motion to dismiss for failure to state a claim should be granted only if the party

asserting the claim is unable to articulate "enough facts to state a claim to relief that is plausible

on its face." Twombly, 550 U.S. at 570.

In reviewing a motion to dismiss for failure to state a claim upon which relief can be

granted, a court may consider the allegations of the complaint, as well as documents attached to

or specifically referenced in the complaint, and matters of public record.  Pittsburgh v. W. Penn

Power Co., 147 F.3d 256, 259 (3d Cir. 1998).  "Plaintiffs cannot prevent a court from looking at

the texts of the documents on which [their] claim is based by failing to attach or explicitly cite

them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  "[A]

'document integral to or explicitly relied upon in the complaint' may be considered 'without

converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original)

(cited in Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007)).

"The defendant bears the burden of showing that no claim has been presented." Hedges

v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

11

## IV.  ANALYSIS

**A.  RICO Claims**

"RICO provides a private right of action to recover treble damages, attorney's fees, and costs of suit "for any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962."  Kolar v Preferred Real Estate Invs., Inc., No. 08-3119, 2010 U.S. App. LEXIS 702, at *22 (3d Cir. Jan. 12, 2010); 18 U.S.C. § 1962(c).  Plaintiffs allege that Defendants committed civil RICO violations under 18 U.S.C. § 1962(c) and (d).

"In order to plead a violation of RICO, [under section 1962(c),] plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004) (citing Sedima v. Imrex Co., 473 U.S. 479, 496 (1985)).[10]

Section 1962(d) is the RICO conspiracy provision.  Under section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.  18 U.S.C. § 1962(d).  "[S]ection 1962(d) prohibits conspirators to knowingly further the affairs of the enterprise."  Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 792 (3d Cir. 1984).

**1. Civil RICO under Section 1962(c)**

**Pattern of Racketeering Activity**

Under section 1961(5), "[a] pattern of racketeering requires at least two predicate acts of

---

[10]  Section 1962(c) provides that: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).

racketeering," which are related and continuous.  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 232 (1989).  Racketeering activity" is defined as "any act or threat involving" specified state law crimes, or any "act" indictable under various specified federal statutes, and certain federal offenses.  Id.; 18 U.S.C. § 1961 (defining "racketeering activity" through exhaustive list of state and federal offenses).

Plaintiffs allege the existence of three predicate acts to establish a pattern of racketeering: (1) federal mail fraud, in violation of 18 U.S.C. § 1341; (2) federal wire fraud, in violation of 18 U.S.C. § 1343; (3) and knowing receipt or possession of stolen property that has crossed a state boundary, in violation of 18 U.S.C. § 2315.

Sections 1341 and 1343 prohibit the intentional use of the mails and wire transmissions system, respectively, in order to execute a "scheme or artifice to defraud."  See 18 U.S.C. § 1961(1); Lum, 361 F.3d at 223.  The elements of federal mail fraud are "(1) a scheme or artifice to defraud, (2) participation by the defendant with specific intent to defraud, and (3) use of the mail in furtherance of the scheme."  United States v. Carey, 337 F. App'x 256, 263 n.9 (3d Cir. 2009) (citing United States v. Copple, 24 F.3d 535, 544 (3d Cir.1994)).

The Third Circuit has observed that "the wire fraud and mail fraud statutes differ only in form, not in substance . . . ."  United States v. Yusef, 536 F.3d 178, 188 (3d Cir. 2008); see United States v. Hitchens, 62 F. App'x 417, 418 (3d Cir. 2002) ("Both mail and wire fraud require a finding that defendant knowingly caused the use of the mails or a wire transmission, respectively.")[11]

---

[11] The wire fraud statute reads, in pertinent part, as follows:

Whoever having devised or intending to devise any scheme or

"A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,1415 (3d Cir. 1991)).

Plaintiffs' third predicate act, the section 2315 claim, charges Defendants with knowingly receiving $5,000 or more in funds that have been obtained through fraud and that have been transported across state lines.  (See Compl. ¶ 55(c).)

"Since the pattern inquiry must assess whether the defendant's actions amount to or pose a threat of continued criminal activity, it is often helpful to examine the actions which are alleged to form the basis of criminal activity." Kolar, 2010 U.S. App. LEXIS 702, at *22 (quoting Kehr Packages, 926 F.2d at 1413).

Plaintiffs claim that numerous mailings and phone calls serve as the basis for the mail and wire fraud claims.  Neither Plaintiffs nor Defendants discuss the section 2315 claim in their submissions.

Plaintiffs aver that the Travel Club Defendants sent promotional mailings, letters, and other advertisements to Plaintiffs.  (Compl. ¶¶ 36, 56.)  Plaintiffs further allege that the

---

artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

promotional materials indicate that free travel awards will be available, and reference "legitimate businesses," such as Olive Garden and Red Lobster, unbeknownst to these businesses.  (Id. at 36.)  The mailing attached to the Complaint as Exhibit A indicates that Defendant Five Points Travel is the "sponsor" of one such promotional offer.  (Id. Ex. A.)  This mailing presents details regarding airfare and a hotel stay, and provides that other complimentary rewards are available. (Id.)

Plaintiffs aver that each of the named Plaintiffs called the toll-free numbers, as directed by these promotional mailings, and that Travel Club Defendants made calls to Plaintiffs to discuss travel rewards and discounts.  (Id. at ¶¶ 42, 57.)  These telephone calls provide a factual basis for Plaintiffs' wire fraud theory.[12]

Plaintiffs claim that the Defendants received over $5,000 in funds that have been fraudulently obtained and have crossed state lines.  Plaintiffs aver that the Defendants have sold over $5 million dollars in travel club memberships.  (Compl. ¶ 30.)  The total amount of the memberships purchased by the named Plaintiffs is $30,317.  (Id. at ¶¶ 11-17.)  Although none of the Defendants addressed this predicate act, this Court, in viewing the factual and legal elements of Plaintiffs' allegations on a motion to dismiss, observes that Plaintiffs have not asserted a factual basis for the allegation that the monies crossed state lines after the funds were allegedly obtained by fraud.  See Fowler, 578 F.3d at 210 ("After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements

---

[12]  This Court notes that Plaintiffs are not required to allege that Defendants initiated telephone communications.  Plaintiffs need only allege that Defendants "caused" wire communications, in that the communications were reasonably foreseeable.  See United States v. Bentz, 21 F.3d 37, 40 (3d Cir. 1994) (quoted in United States v. Veras de los Santos, 184 F. App'x 245, 253 (3d Cir. 2006)).

of a cause of action supported by mere conclusory statements, do not suffice.'") (quoting Iqbal, 129 S. Ct. at 1949).[13]  The Complaint, accordingly, fails to sufficiently allege a section 2315 violation.[14]

Plaintiffs have met the Rule 8(a) basic pleading standard for the first two predicate acts alleged in the Complaint: wire fraud and mail fraud.  Plaintiffs, however, must also meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).

### Rule 9(b) Pleading Standard for Predicate Acts Based on Fraud

A plaintiff must plead federal mail and wire fraud allegations under RICO with particularity, in accordance with Rule 9(b).  Lum, 361 F.3d at 223 (citing Saporito v. Combustion Eng'g, Inc., 843 F.2d 666, 673 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989)).  Moreover, Rule 9(b) similarly applies where a plaintiff relies on a fraud theory undergirding a predicate act.  See generally, id.  The only basis for Plaintiffs' invocation of section 2315 is that the money transported across state lines was unlawfully converted or fraudulently obtained from Plaintiffs.  Rule 9(b), therefore, applies to all three predicate acts alleged by Plaintiffs.

Rule 9(b) "requires plaintiffs to plead 'the who, what, when, where, and how: the first paragraph of any newspaper story.'"  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999).  "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud,

---

[13]  Plaintiffs aver that Defendants move to another location once travel club members in one area become aware of the Defendants' allegedly fraudulent scheme, (Compl. ¶ 43), however, the Complaint lacks any factual allegation regarding the transportation, across state lines, of any funds alleged to have been fraudulently obtained.

[14]  Plaintiffs' failure to adequately allege a third predicate act—in the form of a section 2315 violation—would not, alone, serve as a basis for dismissing Plaintiff's RICO claim because section 1962 only requires that Plaintiffs establish two predicate acts.

or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Lum, 361 F.3d at 223-24 (quoting Seville, 742 F.2d at 791).  At the most basic level, the complaint must include the source, the recipient, and the substance of the fraudulent statement.  See id. ("Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation.")  Anything less than the particularity required by Rule 9(b) fails to put "the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Id.

Plaintiffs' RICO claim, as alleged in the Complaint, fails to satisfy the heightened pleading requirements for several reasons.

To start, although Plaintiffs, in fact, admit that some of the Defendants are "ringleaders," while others are not characterized as ringleaders, throughout the Complaint, Plaintiffs use a shotgun method to accuse all Defendants, except Bluegreen Club, of the same misconduct in violation of the RICO statute.[15]

Plaintiffs insist that the Complaint adequately alleges the facts undergirding the alleged fraudulent scheme.  Plaintiffs have alleged that all of the named Plaintiffs received promotional mailings, and called a toll-free number listed on the promotional mailing, attended an oral presentation prior to purchasing lifetime travel club memberships, attempted to take advantage of promised free rewards and discounts, and did not receive any free rewards or discounts beyond what any non-member would receive.  The crucial missing link is the precise misconduct of

---

[15]  Although Plaintiffs refer to "affiliated travel clubs" in paragraph 22 of the Complaint, Plaintiffs do not allege that all of the named Defendant clubs are affiliated.

specified defendants.

Plaintiffs do not provide the dates that promotional mailings were received, telephone calls were made, or when and where sales presentations were held.  Plaintiffs have failed to indicate which Defendants participated in which acts, which Defendants made particular oral representations, and at what specific places and times.

Plaintiffs do not provide information regarding which Defendants signed the memberships agreements, what the terms of the agreements are, or the time or place of contracting.

Importantly, with the exception of Plaintiff Seavey, the Complaint does not provide any details regarding occasions when the named Plaintiffs attempted to take advantage of the supposed benefits of travel club membership.  This Court, and the Defendants, have no indication from the Complaint whether, and in what manner, each of the named Plaintiffs aimed to avail themselves of free rewards and discounts offered by which Defendants, and the response, if any, such Defendants gave.  See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998) ("[T]he Complaint must be evaluated as to these particular plaintiffs.")

With the exception of Plaintiff Seavey, whose membership agreement with VT Club is attached as an exhibit to the Complaint, for every other named plaintiff, the Complaint merely indicates the date of execution for a travel club membership agreement with an unidentified party, who Plaintiffs claim to be one of the named defendants.

Plaintiffs have failed to specifically plead the details surrounding alleged violations of mail and wire fraud, and the content of the alleged misrepresentations causing Plaintiffs' claimed

injuries from a section 2315 violation.[16]  These deficiencies require that Plaintiffs' RICO claim against the Travel Club Defendants be dismissed, without prejudice.

Moreover, Plaintiffs simply have not alleged that the Credit Card Defendants and Bluegreen Club engaged in any of the above mentioned racketeering activity.  Plaintiffs' substantive RICO claim is dismissed, without prejudice, against the Credit Card Defendants and Bluegreen Club for this same reason.

**"Conduct" of An "Enterprise"**

Plaintiffs must sufficiently allege that each of the Defendants engaged in activities or participated with others in the conduct of an "enterprise."  The Supreme Court has determined that in order "to establish liability under § 1962(c) [a plaintiff] must allege and prove the existence of two distinct entities:  (1) a 'person';[17] and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001); see Kehr Packages, 926 F.2d at 1411 ("[W]hile an entity can be both a

_____

[16]  The Turner Defendants also claim that Plaintiffs' Complaint is deficient because the documentary evidence submitted by Plaintiffs includes disclaimers.  The Turner Defendants highlight the fact that the mailing Plaintiffs submitted as an example states that "terms and conditions apply," and that the agreement Plaintiffs submitted as an example states that the company does not guarantee that its discounts will beat those of competitors in the market.  This Court does not find the Turner Defendants' contention persuasive.  Plaintiffs aptly note that "counsel for [D]efendants cannot say which of the terms, conditions, and restrictions are keeping the free travel rewards out of [P]laintiffs' reach."  (Plaintiffs' Brief in Opposition to Turner Defendants' Motion to Dismiss 2).  If the free rewards are impossible to obtain under any conditions, it would appear to this Court that the phrase "terms and conditions" is a vast understatement under the circumstances.  Moreover, the Turner Defendants fail to mention the fact that the travel membership agreement also states that the travel club will use "best efforts" to deliver substantial discounts.  The presence of the disclaimers identified here is not fatal to Plaintiffs' ability to state a claim based on a fraud theory.

[17]  A RICO person "includes any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

defendant and an enterprise for purposes of [§] 1962(a), such a dual role is impermissible in actions based on § 1962(c).").

The Credit Card Defendants argue that Plaintiffs' RICO claim is fatally flawed because Plaintiffs allege that RCI and FIA Card Services are both RICO persons and RICO enterprises. Defendants' assessment is correct. Because Plaintiffs allege that the Credit Card Defendants are both RICO persons and RICO enterprises, Plaintiffs' RICO claim also fails to satisfy the distinctness requirement as to the Credit Card Defendants.

Plaintiffs have alleged both a formal enterprise, and, in the alternative, an association-in-fact enterprise. Because the Credit Card Defendants may not be both RICO persons and RICO enterprises, Plaintiffs have not properly alleged a formal enterprise.

The Credit Card Defendants also contend that Plaintiffs' RICO claim insufficiently alleges the existence of an association-in-fact "enterprise" because Plaintiffs fail to allege whether the enterprise had certain structural features, including a hierarchy. This Court cannot agree that Plaintiffs' RICO claim is deficient on this basis. Plaintiffs sufficiently allege an association-in-fact enterprise. (See Compl. ¶ 50.)

The Supreme Court of the United States has recently observed that "the [RICO] statute does not specifically define the outer boundaries of the 'enterprise' concept but states that the term 'includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" Boyle v. United States, 129 S.Ct. 2237, 2243 (2009) (quoting 18 U.S.C.§ 1961(4)).

"RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Id. (quoting United States v. Turkette, 452 U.S. 576, 583

20

(1981)).  "[T]he group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, [and] nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence."  Id. at 2245-46 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such group need not have a hierarchical structure or a 'chain of command' . . . .  Members of the group need not have fixed roles . . . .").[18]

An association-in-fact enterprise "must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Id. at 2244 (cited in United States v. Cooper, No. 06-3645, 2009 WL 2713978, at *1 (3d Cir. Aug. 31, 2009)).

Plaintiffs allege that "[u]pon information and belief, defendants [VT Club], [Dream Vacations] and [Bluegreen Club] work in conjunction with defendants Turner, Bernstein, Bork, Five Points Travel, Bentley Travel, Dreamworks Travel, [FIA Services], [RCI], Mastercard, and other individuals and entities like them, to perpetrate the pattern of fraudulent activity described herein throughout the country."  (Compl. ¶ 23.)

The Complaint alleges that a main objective of the scheme is that Plaintiffs open credit card accounts and use the issued credit card to finance the purchase of travel club memberships. (Id.)  The Complaint alleges that the credit cards are available at the sales presentations, which plausibly implicates the Credit Card Defendants in the racketeering episodes (mailings or

---

[18]  The Court, in Boyle, reiterated the notion that the existence of an enterprise is a separate element of a RICO claim, noting, however, that "proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise."  129 S.Ct. at 2245-46.

telephone calls) encouraging attendance at the presentations.  Plaintiffs' factual allegations make it plausible that the Credit Card Defendants and Travel Club Defendants functioned as a continuing unit.[19]

**Statutory Standing & RICO Injury**

In order to establish statutory standing, "a RICO plaintiff [must] make two related but analytically distinct threshold showings":  "(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury is proximately caused by the defendant's violation of 18 U.S.C. § 1962.  Maio v. Aetna, 221 F.3d 472, 484 (3d Cir. 2000); see Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006) (noting that a plaintiff must allege proximate causation of the claimed injury by the racketeering conduct).

A plaintiff may demonstrate an injury by offering "proof of a concrete financial loss and not mere injury to a valuable intangible property interest."  Maio, 221 F.3d at 483 (quoting Steele v. Hospital Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994)).  The Third Circuit has held that the type of property involved determines the scope of the showing a plaintiff must make to demonstrate financial loss.  Id. at 488-92 (identifying a contract for health services as the property interest in action brought against an HMO and requiring plaintiffs to demonstrate contractual failure to perform).

---

[19]  The Credit Card Defendants contend that Plaintiffs' allegations insufficiently allege the existence of an enterprise because the Complaint does not allege how the entities may have colluded.  This Court, consistent with Iqbal, may infer that Plaintiffs' claim—that the Credit Card Defendants agreed to the racketeering activities allegedly inducing Plaintiffs' membership purchases—is plausible because credit cards, allegedly issued by or indicating a connection with the Credit Card Defendants, were available at the sales presentations and allegedly continued to be available following receipt of complaints from Plaintiffs.  The failure to allege specific facts regarding how the Defendants colluded is not fatal to Plaintiffs' claim.

In this case, Plaintiffs argue that they received nothing in consideration for the lifetime travel club membership they purchased. Thus, the nature of the property right is contractual. In order to properly allege financial loss based on a failure to perform on a contract, a plaintiff must allege that the defendant neglected its contractual obligations, beyond a mere breach. See id.

Plaintiffs insufficiently allege the scope of the Defendants' contractual obligations and the extent of nonperformance. Plaintiffs must provide details regarding the membership agreements, Plaintiffs unsuccessful efforts to seek benefits under the membership agreements, and Plaintiffs efforts to obtain a remedy under the relevant credit card agreements.[20] Without such allegations, Plaintiffs are unable to state a RICO injury based on a contractual failure to

---

[20] FIA Card Services argues that Plaintiffs also may not allege a RICO claim against FIA Card Services because Plaintiffs have failed to exhaust alternative remedies and the extent of Plaintiffs' loss is uncertain. FIA Card Services relies on the Second Circuit's decision in Harbinger Capital Partners Masters Fund I, Ltd., v. Wachovia Capital Mkts, No. 08-4692-cv, 2009 U.S. App. LEXIS 21657 (2d Cir. 2009). FIA Card Services' reliance on Harbringer Capital is misplaced.

The plaintiffs in Harbringer Capital were creditors allegedly defrauded by the defendant-debtor company. Id. at *1. The court noted that the debtor company was in bankruptcy and that the company's trustee was pursuing recovery efforts against third parties. Id. at *2. The court found that the extent of the plaintiffs' loss was uncertain because it remained to be seen whether the plaintiffs would recover from the bankruptcy proceeding. Id. at *3. The court held that due to the absence of a clear and definite amount of damages, the plaintiffs' RICO claims were not ripe. Id. at *4.

Here, the total amount that Plaintiffs are obligated to pay, either to the Travel Club Defendants or to the alleged credit card issuer, FIA Card Services, is definite and Plaintiffs' Complaint does not allege an alternative avenue for redress.

According to Plaintiffs' Complaint, even if FIA Card Services has remitted partial or total payments to the Travel Club Defendants on behalf of several Plaintiffs, Plaintiffs remain indebted to repay those amounts pursuant to any credit card agreements. Plaintiffs that paid the sum without the assistance of credit card financing are in a position to be reimbursed for actual amounts paid. Further, Plaintiffs have alleged that at least some of the them have requested and been routinely denied relief via FIA Card Services' dispute resolution process. (Compl.¶ 41 ("[FIA Card Services] has consistently refused to refund and/or cancel the disputed charges.").)

23

perform.[21]

## 2. Civil RICO Conspiracy under 1962(d)

Plaintiffs' RICO conspiracy claim ultimately fails because the Plaintiffs' substantive civil RICO claim is deficient.  Lum, 361 F.3d at 227 n.5 ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (quoting Lightening Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1192 (3d Cir. 1993)).

"In order to state a claim under RICO subsection [1962](d), a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were a part of a pattern of racketeering activity conducted in such a way as to violate section 1962 (a), (b), or (c)."  Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989).  In order for liability to lie on a civil RICO conspiracy claim, "a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts."  Id.

As to the Travel Club Defendants, Plaintiffs allege that the conspiracy continued from at least 2006, for the purpose of inducing purchases of travel club memberships of little to no value, and that the Travel Club Defendants furthered the alleged fraudulent scheme via promotional mailings, telephone calls, sales presentations, and provision of credit card financing.

Plaintiffs' RICO conspiracy claim against the Travel Club Defendants does not appear to

---

[21]   The Turner Defendants claim that the "travel club memberships permit[] [Plaintiffs] access to a range of timeshare condominiums within a set band of prices."  (Turner Defs.' Mot. to Dismiss 1.)  Contrastingly, Plaintiffs base their claim—that the Travel Club Defendants failed to perform—on one Plaintiff's attempt to book a single flight to Florida.  Alone, this allegation is insufficient to demonstrate that the Defendants' alleged failure to perform constituted more than a mere breach.

this Court to be facially deficient.  Conspiracy allegations are measured under the liberal pleading

standard under Rule 8(a), not under the heightened pleading standard required by Rule 9(b).

Rose, 871 F.2d at 366; see Lum, 361 F.3d at 220 n.2 (stating that Rule 8(a) pleading

requirements can be met by the "somewhat conclusory" allegations of conspiracy in the

complaint).  Moreover, a court may glean allegations of conspiracy in the complaint as a whole.

Id.

      In contrast, Plaintiffs' substantive RICO claim and RICO conspiracy claim ultimately

must fail, however, as to the Credit Card Defendants because Plaintiffs fail to allege that the

Credit Card Defendants committed predicate acts or at least agreed with the Travel Club

Defendants that the predicate acts would be committed.  Instead, Plaintiffs have alleged an aiding

and abetting theory against the Credit Card Defendants.  FIA Card Services cites the Third

Circuit's decision in Rolo,155 F.3d at 656, for the proposition that section 1962 does not provide

a basis for a private civil "aiding and abetting" cause of action in light of the Supreme Court's

decision in Central Bank of Denver, N.A. v, First Interstate Bank of Denver, N.A., 411 U.S. 164

(1994).  To the extent that Plaintiffs' civil RICO conspiracy claim against the Credit Card

Defendants relies on an aiding and abetting theory, the claim must fail.

**B.  State Law Claims**

      Plaintiffs assert the following state law claims:  fraud, negligent misrepresentation, and

imposition of a constructive trust.[22]

---

      [22]  The parties have not addressed any choice of law issues in relation to Plaintiffs' state
law claims.  The Complaint indicates that Plaintiffs are residents of New Jersey, New York, and
Pennsylvania.  Plaintiffs, however, have not alleged the locations where the agreements were
signed.  Because it does not appear that there is a true conflict of law between the laws in the
relevant states, this Court looks to New Jersey law for purposes of determining the Defendants'

Plaintiffs' state law claims, each based on fraud or mistake, are also subject to the heightened pleading requirements of Rule 9(b).  See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Kanter v. Barella, 489 F.3d 170, 176 (3d Cir. 2007) (applying federal particularized pleading rules to state law claims in shareholder derivative action); Continental Collieries, Inc. v. Shober, 130 F.2d 631, 634 (3d Cir. 1942) (stating that for the purposes of pleading requirements, the federal rules of civil procedure, rather than "state practice," controls).  Plaintiffs have failed to adequately substantiate their state law claims under Rule 9(b).

Under New Jersey law, in order to state a claim for fraud, a plaintiff must plead five elements:  (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Banco Popular N. Am. v. Gandi, 876 A.2d 253, 260 (N.J. 2005) ("Although the word 'fraud' is used in common parlance to connote any practice involving shady or underhanded dealing, in the law it is a term of art with a clear definition.").

To state a claim for negligent misrepresentation, a plaintiff must allege (1) a misstatement; (2) reliance; and (3) proximate cause."  H. Rosenblum, Inc. v. Adler, 461 A.2d 138, 142-43 (N.J. 1983) (Negligent misrepresentation is "[a]n incorrect statement, negligently made and justifiably relied upon, [and] may be the basis for recovery of damages for economic loss or injury sustained as a consequence of that reliance.").  "The actual receipt and

---

motions to dismiss.  See Legegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006) ("If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same.").

consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission." Kaufman v. I-Stat Corporation, 754 A.2d 1188, 1195 (N.J. 2000). The element of reliance is the same for fraud and negligent misrepresentation." Id. at 1195. The New Jersey Supreme Court has observed, however, that [b]ecause negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud." Id.

To support their fraud and negligent misrepresentation claims, Plaintiffs rely on the factual allegations underlying their federal RICO claim. Plaintiffs further assert that "[i]f the [P]laintiffs had known the true facts, they would never have purchased their memberships in [the Travel Club Defendants'] 'travel clubs' to begin with." (Compl. ¶ 67.) As to the fraud claim, Plaintiffs also allege that each of the Defendants "had the intent to deceive or defraud the [P]laintiffs . . . ." (Id. at ¶ 66.)

A court may impose a constructive trust "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." Flanigan v. Munson, 818 A.2d 1275, 1281 (N.J. 2003). New Jersey courts apply a two-pronged test to determine whether a court should impose a trust: (1) "a party committed 'a wrongful act'" and (2) "the wrongful act must result in a transfer or conversion of property that unjustly enriches the recipient." Id. A wrongful act includes, but is not limited to, "fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property." Dime Sav. Bank of N.Y. v. Riethemer, No. A-2323-07T2, 2009 N.J Super. Unpub. LEXIS 211, at *20 (N.J. Super. Ct. App. Div. Jan. 2, 2009) (quoting D'Ippolito v. Castoro, 242 A.2d 617, 619 (N.J. 1968). The New Jersey Supreme Court has "caution[ed] courts generally

that a constructive trust is a powerful tool to be used only when the equities of a given case clearly warrant it." Id. at *19 (quoting Flanigan, 818 A.2d at 1283).

To satisfy the first prong of the test, Plaintiffs have alleged fraud and mistake (negligent misrepresentation) as to the Travel Club Defendants. In the Complaint, Plaintiffs aver that the Credit Card Defendants furthered the Travel Club Defendants' fraudulent scheme. As to the second prong, the Complaint indicates that all of the Defendants received money from Plaintiffs, or are in a position to be reimbursed by Plaintiffs following payments FIA Card Services made to the Travel Club Defendants on Plaintiffs' behalf.

FIA Card Services argues that, besides failing to meet the heightened pleading standard, Plaintiffs have also failed to state a claim for constructive trust because a credit card agreement between some of the Plaintiffs and FIA Card Services precludes the availability of a quasi-contractual remedy, such as imposition of a constructive trust. This Court does not agree that, at this juncture, the existence of credit card agreements provides an independent basis for dismissal of Plaintiffs' constructive trust claim against the Credit Card Defendants.

Plaintiffs have alleged that FIA Card Services is aware or is recklessly indifferent to the Travel Club Defendants' alleged fraudulent scheme, that Plaintiffs have pursued the dispute resolution process and that FIA Card Services has categorically denied relief to Plaintiffs, and that FIA Card Services has continued to afford credit card financing to Travel Club Defendants.[23]

---

[23] FIA Card Services' remaining arguments regarding the constructive trust claim are without merit. FIA Card Services insists that Plaintiffs are required to allege that a confidential relationship exists. Because Plaintiffs allege that FIA Card Services aided or furthered the Travel Club Defendants' alleged fraudulent scheme, Plaintiffs' fraud allegations may serve as the "wrongful act" underlying Plaintiffs' claim for imposition of constructive trust against FIA Card Services. FIA Card Services also argues that Plaintiffs merely allege that FIA Card Services extended credit, but failed to allege that FIA Card Services was unjustly enriched. Plaintiffs'

At the motion to dismiss stage, this Court is not in a position to determine the merits of Plaintiffs' claim for imposition of a constructive trust, namely whether it may be subsequently defeated as a result of the terms of credit card agreements, which neither side has submitted to this Court for consideration.  See <u>Sands</u>, 502 F.3d at 268.

Plaintiffs, however, as indicated above, have failed to indicate which Defendants committed which acts, on which dates, or the scope of the Travel Club Defendants' alleged failure to perform under the agreements, and the dates of complaints allegedly received by FIA Card Services.

Plaintiffs' allegations, while minimally sufficient under Rule 8(a), nonetheless fail, under Rule 9(b), to provide facts that would provide Defendants with specific notice of the precise misconduct underlying Plaintiffs' state law claims.

Plaintiffs' fraud, negligent misrepresentation, and constructive trust claims are dismissed, without prejudice.

## C.  Personal Jurisdiction

Bluegreen Club contends that this Court lacks personal jurisdiction over Bluegreen Club because "the allegations pled in Plaintiffs' Complaint make no showing that [Bluegreen Club] has any connection to New Jersey whatsoever."  (Bluegreen Club's Motion to Dismiss 19; Affidavit of Kathy Foster in Support of Bluegreen Motion To Dismiss.)

---

factual allegation that FIA Card Services "consistently refused to refund and/or cancel the disputed charges" indicates that Plaintiffs would thus remain indebted to FIA Card Services for the amount of the disputed charges and bound to any other financial terms in the credit card agreements.  Plaintiffs specifically request a constructive trust be imposed over "all other revenue received by the [D]efendants, as a result of the wrongful acts complained of herein."  (Compl. ¶ 83(c).)

"Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009).  In the absence of an evidentiary hearing, at the motion to dismiss stage, the plaintiff need only make a prima facie showing that personal jurisdiction exists.  See id.

Plaintiffs' sole basis for asserting state law claims against Bluegreen Club is the alleged presence of a Bluegreen Club "trademark" on a credit card.  The Complaint does not provide a description of the alleged trademark.  Plaintiffs do not allege that any Plaintiffs obtained a credit card that included an alleged Bluegreen Club trademark.  Plaintiffs have not submitted a copy of such credit card to this Court, or to Bluegreen Club upon its request.  Importantly, Plaintiffs have not alleged that such card was viewed in New Jersey or that Bluegreen Club has other contacts with this state.  Plaintiffs have failed to make a prima facie showing that personal jurisdiction exists.

Where plaintiffs are unable to make a prima facie showing, a court may permit jurisdictional discovery if the plaintiff alleges facts that, with "reasonable particularity," suggest that contacts exist between the defendant and the forum state.  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003).  This Court will grant Plaintiffs' request for jurisdictional discovery because Plaintiffs' contention—that Bluegreen Club's alleged trademark appears on credits cards issued as a part of this fraudulent scheme—suggests the possibility of contacts between Bluegreen Club and the state of New Jersey.

## VI.  CONCLUSION

Plaintiffs have not pled fraud allegations with factual specificity to state a federal civil

30

RICO claim or state law claims for fraud, negligent misrepresentation, and imposition of a constructive trust.  Because Plaintiffs' substantive federal RICO claim fails, the civil RICO conspiracy claim similarly fails.

For the above reasons stated above, Defendants' motions to dismiss the Complaint for failure to state a claim are granted, without prejudice.  Bluegreen Club's motion to dismiss for lack of personal jurisdiction is also granted, without prejudice.  Plaintiff's request for jurisdictional discovery is granted.[24]  The Complaint is dismissed, in its entirety, without prejudice.[25]

                                       S/Joseph A. Greenaway, Jr.
                                       JOSEPH A. GREENAWAY, JR., U.S.C.J.
                                       (Sitting by designation on the District Court)

Date:  March 8, 2010

---

[24]  This Court also sua sponte dismisses Plaintiffs' Complaint, without prejudice, against any remaining defendants.  See Roman v. Jeffes, 904 F.2d 192, 196 (3d Cir. 1990).  A court may sua sponte dismiss an action, pursuant to Federal Rule of Civil Procedure 12(b)(6), when it states no valid claim for relief, as long as the Plaintiff has been given the opportunity to address the issue.  Id.

[25]  This Court, in its discretion, will permit Plaintiffs to amend the Complaint.  See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  Plaintiffs are directed to file, if they so choose, an amended complaint within 30 days.
        This Court reserves, to a later time, its determination on whether the circumstances of this case warrant further exercise of supplemental jurisdiction over Plaintiffs' state law claims. See 28 U.S.C. §1367 (c)(3); see Huertas v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court had original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.")