<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|   |   |
|---|---|
| BRIAN GRANT, et al., | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) Civil Action No. 09-2381 (GEB) |
| v. | ) |
|  | ) **MEMORANDUM OPINION** |
| DARRYL J. TURNER, et al., | ) |
|  | ) |
| Defendants. | ) |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the renewed Motion to Dismiss (Doc. Nos. 126, 102) the Second Amended Complaint of the defendants Darryl T. Turner, Allen Bernstein, Jackie Bork, Five Points Travel, Dream Vacations International, Inc., Dreamworks Vacation Club, Dreamworks Vacations, Dreamworks, Destination Vacations International, Bentley Travel, Modern Destinations Unlimited, Vacation Clubs, LLC and La Bonne Vie Travel; the renewed Motion to Dismiss the Second Amended Complaint (Doc. Nos. 127, 103) of the defendant Bank of America/FIA Card Services; the renewed Motion to Dismiss the Second Amended Complaint (Doc. Nos. 125, 105, 112) of the defendant Bluegreen Vacations Club, Inc.; and the renewed Motion to Dismiss the Second Amended Complaint (Doc. Nos. 128, 110) of the defendant Resort Condominiums International ("RCI"), LLC.[1]  The Court has considered the parties' submissions

---

[1] The Court notes that Vacation Travel Club, Inc., d/b/a La Bonne Vie Travel, did not renew its separate motion to dismiss after Plaintiffs filed their Civil Rico Case Statement but rather is a movant along with several other defendants in a joint renewed motion.  (See Doc. Nos. 104, 126.)  In addition, to the extent that formal notice of the renewal of the several motions to dismiss was not filed, the Court concludes that it will consider all renewed motions as having

in addition to the Civil RICO Case Statement ("Case Statement") filed by the putative class action plaintiffs Brian Grant, Chenel Grant, Martin Pribush, Diane Pribush, Larry Kaliner, Lois Kaliner, Robert Pinto, Bonnie Pinto, Benjamin M. Cohan, Leonard Schonfeld, Morris Seavey, and all persons similarly situated (collectively "Plaintiffs"). (Doc. No. 123.)  The Court has decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, the Court will grant Defendants' Motions to Dismiss with prejudice.[2]

## I.   BACKGROUND

This dispute involves a group of putative class action Plaintiffs who bring suit against various individual and corporate defendants herein referred to as the Travel Club Defendants.[3]

---

been filed timely and will address each accordingly in this memorandum opinion and accompanying order.  (See Doc. Nos. 130, 131, 132, 133, 134, and 135.)

[2]   To the extent that other individuals or businesses are listed on the docket as defendants in this action but are not named in the Second Amended Complaint's caption, the Court terminates them as parties to this action.  The following defendants are no longer parties in this litigation: Erica Drake, Adam Hawk, Carol Sandes-Drake, Roger Warren and Mastercard Incorporated.  However, a number of individuals and businesses have been named in the Second Amended Complaint and should be added to the docket: Dreamworks Vacations, Dreamworks, Modern Destinations Unlimited, Vacation Clubs, LLC d/b/a La Bonne Vie Travel, Tony Marineli, Zach Vaihinger, Carl Savage, and Eric Shuman.

[3]   One group of defendants is defined as the "Travel Club Defendants," and includes Daryl T. Turner, individually and d/b/a Dream Vacations International, Inc., Dreamworks Vacation Club, Dreamworks Vacations; Dreamworks; Destination Vacations International; Bentley Travel; Modern Destinations Unlimited; Vacation Clubs, LLC, d/b/a La Bonne Vie Travel; Five Points Travel Company; Vacation Travel Club, Inc.; Jackie Bork; Tony Marineli; Zach Vaihinger; Carl Savage; and Eric Shuman. (Second Amended Compl. ¶ 2; Doc. No. 106.) The Court, when collectively referring to this group, shall also describe them as the Travel Club Defendants.  Another set of defendants is defined as "the Credit Card Defendants" and includes FIA Card Services, d/b/a Bank of America, Bluegreen Vacations Club, Inc., and RCI, LLC.  (Id. at ¶ 4.)

Plaintiffs allege that the Travel Club Defendants were involved with fraudulent travel clubs and swindled Plaintiffs and those similarly situated by convincing Plaintiffs to buy memberships in the various travel clubs without receiving the benefits which they were promised.[4]  Part of this scheme involved the reference to and participation by the Credit Card Defendants, which are "otherwise ostensibly legitimate business entities," and the Travel Club Defendants used these entities to "lend an air of legitimacy to the fraudulent operations of the Travel Club Defendants by providing . . . 'point of sale' financing for the sale of memberships in their bogus 'travel clubs.'" (Second Amended Compl. ¶ 4.)  Plaintiffs assert that the "Credit Card Defendants [were] aware of the fraud being perpetrated by the Travel Club Defendants, yet they continue[d] to willingly participate in their fraudulent scheme." (Id.)

The specifics of the scheme alleged are as follows.  The Travel Club Defendants sell memberships in their respective clubs and promote "exclusive and substantial discounts for travel-related services," but Plaintiffs state that "the promised discounts and other rewards simply do not exist."  (Id. at ¶ 2.)  In an effort to promote these discounts, the Travel Club Defendants "circulate[] mailings through the U.S. mail" that "contain false promises of free rewards and/or benefits, such as free airline tickets, free car rentals, or free gas cards."  (Id. at ¶ 43.)  On these mailings, "Defendants falsely employ the trademark, service mark or trade name of well-known and legitimate business enterprises, including Jet Blue Airlines, United Airlines, American Airlines, U.S. Airways, Spirit Airlines, Southwest Air Lines Co., Delta Airlines, Marriot,

---

[4]  For the purposes of this memorandum opinion and in contemplation of the several motions to dismiss, the Court accepts the factual assertions in the Second Amended Complaint as true.  In addition, the Court considers the assertions in Plaintiffs' Case Statement as supplemental pleadings, and also considers them as true for the purpose of this analysis.

Sheraton, Ritz-Carlton, Enterprise Rent-A-Car, Avis Budget Group, Inc., Dollar Rent A Car, Hertz, Olive Garden, Red Lobster, Bahama Breeze and Freeman Hicks." (Id.) Defendants did not have permission to use these trademarks, service marks, or trade names, but they nevertheless use these marks "to lend legitimacy to their false and fraudulent promises." (Id. at ¶¶ 43, 44.)

Plaintiffs assert a number of examples in their Second Amended Complaint where each of the Plaintiffs have received a mailing from the Travel Club Defendants that offered a gift. Each mailing directed the recipient to call a toll free number to claim the gift, and that if the recipient called within 72 hours, he or she would receive a bonus prize. (Id. at ¶¶ 45, 46, 47, 48, 49, 50.) "The plaintiffs called the phone numbers as instructed and were told that to claim their rewards, they needed to attend a sales presentation." (Id. at ¶ 51.) However, "[n]one of the plaintiffs who attended the sales presentations as instructed received the promised "[rewards]". (Id. at ¶ 52.) "Instead, the plaintiffs received certificates and vouchers that had to be submitted to various third-party providers" that "required that the certificates and vouchers be submitted according to an elaborate set of procedures which made the 'free' travel rewards unobtainable and anything but free." (Id. at ¶ 53.) The Second Amended Complaint provides examples of these conditions that were not disclosed prior to attendance at the sales presentations. (Id. at ¶¶ 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64.)

"At the sales presentations, the Travel Club Defendants further promised the plaintiffs a variety of free trips and travel services, in return for their purchase of 'Travel Club' memberships, such as a free all-inclusive trip to Mexico, a free condominium stay, or a free cruise aboard a Celebrity or Royal Caribbean cruise line." (Id. at ¶ 65.) Plaintiffs who agreed to purchase the membership, however, did not receive the free incentives promised, and rather, "received

4

certificates and vouchers that had to be submitted to various third-party vendors" who "required that the certificates and vouchers be submitted according to an elaborate set of procedures which made the 'free' travel rewards unobtainable and anything but free." (Id. at ¶ 66; see also ¶¶ 67, 68, 69, 70, 71.)  In addition, at the sales presentations, "[P]laintiffs were told that by purchasing a membership . . . they would be entitled to a variety of travel-related services at substantially discounted prices not available to the general public, including substantially discounted prices for luxury four- and five-star hotel accommodations, airfare, car rentals, cruise vacations, vacation tours, golf and recreation, and all inclusive packages, for the remainder of their lives." (Id. at ¶ 72; see also ¶¶ 73, 74, 75, 76, 77, 78, 79, 80, 81.)  Several of the Plaintiffs were "unable to book travel through the websites" operated by Defendants Vacation Travel Club or Destination Vacations International. (Id. at ¶ 82.)  Further, "the Travel Club Defendants told the plaintiffs that they are members of the Better Business Bureau ("BBB") in good standing" but "[a]t all relevant times, none of the Travel Club Defendants were members in good standing with the BBB." (Id. at ¶ 83.)

In short, Plaintiffs assert that the exclusive travel discounts are not in fact discounts, and that "instead are prices that are the same as or even higher than the rates charged to customers who purchase the same travel services through other vendors" or "simply do not exist." (Id. at ¶ 3.)  In addition, "once it becomes clear to the population in a particular area that their operations are an elaborate fraud, the Travel Club [D]efendants surreptitiously change names, or simply close their operations and move elsewhere." (Id.)  Part of the Travel Club Defendants' scheme is to involve "otherwise ostensibly legitimate business entities," including the Credit Card Defendants, to "lend an air of legitimacy to the fraudulent operations of the Travel Club Defendants." (Id. at ¶

4.) The Credit Card Defendants operate in conjunction with the Travel Club Defendants by "providing 'point of sale' credit card financing to prospective victims of the fraud" and "are aware of the fraud being perpetrated." (Id.) "The credit terms offered included interest-only payments for the first six months" and "[t]he credit cards issued by the defendants prominently display the letters 'RCI,'" RCI's trademark, and "the words 'bluegreen resorts,'" Bluegreen Vacation Club, Inc.'s trademark. (Id. at ¶ 89.) These credit cards are financed "through defendant FIA Card Services, d/b/a Bank of America," and "adds enough legitimacy to defendants' fraudulent operations to push prospective victims of their scheme onto the dotted line." (Id. at ¶¶ 89.) "FIA Card Services, unlike most other credit card companies, refuses to refund [Plaintiffs'] money or cancel the disputed charge" when Plaintiffs called with disputes, however, "in an obvious effort to undermine plaintiffs' collective effort to obtain class-wide relief for the victims of defendants' fraud, defendant FIA Card Services did provide refunds to 'certain' plaintiffs, such as Martin and Diane Pribush and Brian and Chenel Grant." (Id. at ¶ 91.) Others, however, were not refunded. (Id. at ¶¶ 92, 93, 71, 72.)[5]

Plaintiffs originally filed a complaint on May 18, 2009, which the Honorable Joseph A. Greenaway dismissed on March 15, 2010, after having considered a number of motions to dismiss filed by the various defendants. (Doc. Nos. 93, 94.) Plaintiffs, pursuant to that memorandum opinion and order, filed an amended complaint on April 6, 2010. (Doc. No. 95.) This matter was reassigned to this Court on April 14, 2010. (Doc. No. 96.) However, Plaintiffs soon thereafter filed a second amended complaint, stating that they mis-identified one of the defendants. (Doc.

---

[5] The Second Amended Complaint includes two paragraphs labeled "72" and "73," but these sequentially fall after paragraph 93, and therefore, should be numbered "94" and "95". It is to these numbered paragraphs the Court refers.

Nos. 106, 107.)  All Defendants thereafter respectively filed motions to dismiss, but the Court ordered Plaintiffs to file a RICO Case Statement and that after its filing the Defendants could renew their motions to dismiss.  (Doc. Nos. 118, 119.)  Plaintiffs filed their Case Statement on November 12, 2010.  (Doc. No. 123.)  Thereafter, each of the Defendants renewed their motions to dismiss.  The Court herein considers these motions in light of the Case Statement.

## II.     DISCUSSION

### A.     Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully."  Id.  (citing Twombly, 550 U.S. at 556).  Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 231-

33 (3d Cir. 2008). In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainants' claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

In light of Iqbal, district courts should conduct a two-part analysis when evaluating a motion to dismiss for failure to state a claim.

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949-50). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Where a RICO plaintiff relies on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Thus, the plaintiff must absolutely allege who made a misrepresentation to whom and sufficiently set forth the general content of the misrepresentation. See Rolo v. City of Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998); Klein v. Gen. Nutrition Cos., 186 F.3d 338, 345 (3d Cir. 1999). In addition, to satisfy Rule 9(b), the

plaintiff must plead with particularity "the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

### B. The Parties' Motions and Respective Arguments

In support of their Motion to Dismiss, the Travel Club Defendants assert a number of arguments. (Doc. Nos. 126, 102.) They assert that "plaintiffs once again failed to adequately plead their fraud claims, and any civil RICO claims predicated thereon, and have failed especially against the individual defendants as no specific allegations are made against the individual defendants." (Travel Club Defs.' Br. at 1; Doc. No. 126.) In addition, the Travel Club Defendants assert that "the Complaint once again consists of many paragraphs of conclusory allegation and puff." (Id. at 2.) Furthermore, the Travel Club Defendants acknowledge that "[w]hile plaintiffs have now attached the relevant documents . . . of alleged misrepresentation," the Second Amended Complaint, nevertheless, "fail[s] to supply any particularized details as to the sales people who offered them the memberships." (Id. at 2-3.) Defendants assert that this failure does not comply with the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). (Id. at 3.) The Travel Club Defendants aver, with respect to Plaintiff's Case Statement, that "in listing and describing the alleged predicate acts, [P]laintiffs simply rely on and restate the allegations in the amended complaint and the exhibits attached to the amended complaint" and "fail[] to identify or specify the alleged conduct of each of the individual defendants." (Id. at 3-4.) Rather, they point out that Plaintiffs refer to them generally as the

9

"Travel Club Defendants" "without any specific allegations as to how each and every individual defendant was engaged in a 'pattern of racketeering.'" (Id. at 4.) Finally, the Travel Club Defendants assert that pursuant to the Membership Agreement each Plaintiff signed, therein is included an arbitration clause and therefore, there is an issue as to which members of the purported class are subject to the arbitration clause's provisions. (Id. at 4.)

RCI also filed a Motion to Dismiss. (Doc. Nos. 128, 110.) RCI argues that Plaintiffs' Second Amended Complaint should be denied because Plaintiffs "failed to address any of the deficiencies in their original pleading." (RCI's Br. at 1; Doc. No. 128.) RCI also points out that in this Court's October 12, 2010 opinion (Doc. No. 118), the Court held that it could not determine "whether the Second Amended Complaint contains sufficient pleadings as to certain key elements" and therefore directed that Plaintiffs file a Case Statement. (RCI's Br. at 1.) However, RCI argues that despite the Court's ruling, Plaintiffs failed to add any additional details with respect to their allegations against RCI, and that the Case Statement "simply parrots the allegations against RCI from the Second Amended Complaint." (Id. at 1.) RCI avers that "Plaintiffs do not provide any detail or specificity for the basis for their claims against RCI; they continue to allege only that RCI assisted the fraudulent operations by allowing its name to be used on credit cards used by some plaintiffs to purchase their travel club memberships" and the pleadings "fail[] to describe a single conversation, meeting, or event involving or relating to RCI" or "to set forth any facts concerning RCI's knowledge, agreement, or participation in any fraudulent scheme." (Id. at 1-2.)

FIA Card Services d/b/a Bank of America ("FIA") also filed a Motion to Dismiss. (Doc. Nos. 127, 103.) FIA argues that "Plaintiffs have failed to add anything of substance" in their

Second Amended Complaint and Case Statement and simply "re-recit[e] . . . the same allegations made against FIA in the original Complaint dismissed by the Honorable Joseph A. Greenaway as insufficient on March 12, 2010." (FIA's Br. at 1, 4-11; Doc. No. 127.)  FIA points out that Plaintiffs state that not all of them "finance[d] their memberships with a 'Bank of America/RCI Mastercard.'" (Id. at 2.)  For this reason, FIA asserts that "FIA's involvement could not be 'part and parcel' of the alleged travel club scam as required for RICO liability". (Id.)  Moreover, FIA maintains that "Plaintiffs . . . fail to allege any predicate acts by FIA that might otherwise give rise to a RICO claim." (Id. at 3.)   FIA further argues that "Plaintiffs have failed to adequately allege the existence of an association-in-fact enterprise or that FIA conducted or participated in the conduct of such an enterprise's affairs." (Id. at 3; 16-22.)  FIA argues because Plaintiffs' substantive RICO claim must fail, "Plaintiffs' Section 1962(d) claim necessarily fails." (Id. at 13; 25-26.)

Bluegreen Vacations Club ("BVC") also filed a Motion to Dismiss.  (Doc. Nos. 125, 105, 112.)  BVC alternatively asserts that its motion should be granted with prejudice due to lack of personal jurisdiction or for failure to state a claim.  (BVC's Br. at 1-2; Doc. No. 125.)   BVC asserts that "despite having multiple opportunities to do so, Plaintiffs have made no effort to rebut or respond to BVC's Motion to Dismiss for Lack of Personal Jurisdiction." (Id. at 4.)   BVC also points out that in his March 12, 2010 Opinion, Judge Greenaway "allowed the Plaintiffs to engage in jurisdictional discovery in response to BVC's assertion of the defense of lack of personal jurisdiction; however, the Plaintiffs have simply decided not to do so." (Id. at 5.)   BVC alternatively asserts that its motion should be granted because "the entire basis for naming BVC in this action is based on the spurious allegation that the appearance of a 'Bluegreen Resorts' logo on

11

a credit card issued to one Plaintiff added a further 'air of legitimacy' to the acts of the other Defendants." (Id. at 6.) In addition, BVC avers that nothing additional has been included in the Case Statement "to expound upon, augment, or explain this frivolous and poorly defined allegation which has been asserted in Plaintiffs' Second Amended Complaint; nor does it make any effort to describe what specific facts or omissions, as carried out by BVC, warrant BVC's inclusion in the instant suit." (Id.)

   Plaintiffs filed one brief in opposition to these motions. (Doc. No. 113.) Plaintiffs argue that the Second Amended Complaint states sufficient factual detail, with particularity, to establish a pattern of racketeering activity. (Pls.' Opp. Br. at 8-15; Doc. No. 113.) Specifically, Plaintiffs aver that the Second Amended Complaint specifies the "'who, what, when, where and how' of the fraud . . . by the individual defendants." (Id. at 10.) They also point out that they have attached "the contract documents, vague and ambiguous as they are, drawn up by the Travel Club Defendants." (Id.) In addition, Plaintiffs maintain that they have met their pleading requirements to establish the conduct required of a RICO enterprise. (Id. at 15-18.) With regard to the argument that Plaintiffs have "fail[ed] to identify the source of the mails or phone calls," Plaintiffs assert that they "simply do not know who was responsible for the mailings or who was responsible for taking their phone calls, and cannot be expected to without discovery. All they know is that they called the numbers provided and were told to show up at the offices of an entity owned and operated by Daryl Turner, where they were sold a worthless travel club membership." (Id. at 17.) Additionally, Plaintiffs assert they have adequately alleged a RICO conspiracy under Section 1962(d). (Id. at 20-22.)

12

**C.    Analysis**

"Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of litigation." Manhattan Telecomms. Corp. v. DialAmerica Mktg., 156 F. Supp. 2d 376, 380 (S.D.N.Y. 2001) (quotations and citations omitted). "[C]ourts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." Id. (citing Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998)).

Section 1962 of Title 18 of the United States Code provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Therefore, "[t]o plead a RICO claim under § 1962(c), the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. Aug. 16, 2010) (citing Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)) (internal quotes omitted). Section 1962(d) is the RICO conspiracy provision. Pursuant to this Section, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Thus, Section 1962(d) "prohibits conspiracies to knowingly further the affairs of the enterprise." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 792 n.8 (3d Cir. 1984).

As previously stated, Plaintiffs must properly plead conduct of an enterprise through a pattern of racketeering activity. See In re Ins. Brokerage Antitrust Litig., 618 F.3d at 362. "[A]n

'enterprise' includes 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" Id. at 362-63 (citing 18 U.S.C. § 1961(4)). The term "racketeering activity" refers to the list of enumerated federal and state crimes provided in § 1961(1) of the RICO statute and includes, mail fraud and wire fraud. Id. at 363; see also 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 1346 (scheme or artifice to defraud).

A pattern of racketeering activity requires a pleading of at least two predicate acts of racketeering. Lum, 361 F.3d at 223. "The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud." Id. "A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991)).

Rule 9(b) mandates a heightened standard for pleading fraud requiring that facts be pleaded with particularity: "'the who, what, when, where, and how' of the events at issue." Kanter v. Barella, 489 F.3d 170, 175 (3d Cir. 2007). "[P]laintiffs must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Lum, 361 F.3d at 223-24 (internal quotations omitted). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id. at 224. The Court, therefore, turns to whether in their amended pleading

and Case Statement Plaintiffs have met the Rule 9(b) pleading standard for the predicate acts based on fraud.

The Court notes that Plaintiffs indeed amended their complaint after Judge Greenaway issued an opinion and order in this matter on March 12, 2010.  In that opinion, Judge Greenaway held in part that the Complaint should be dismissed because "Plaintiffs fail to address Defendants individually."  (March 12, 2010 Opinion at 3 n.4; Doc. No. 93.)  Judge Greenaway noted that the original complaint failed to satisfy the heightened pleading standard required for several reasons, including that "throughout the Complaint, Plaintiffs use a shotgun method to accuse all Defendants, except Bluegreen Club, of the same misconduct in violation of the RICO statute." (Id. at 17.)  Judge Greenaway provided specific guidance on this point.  He wrote:

> The crucial missing link is the precise misconduct of specified defendants.
>
> Plaintiffs do not provide the dates that promotional mailings were received, telephone calls were made, or when and where sales presentations were held.  Plaintiffs have failed to indicate which Defendants participated in which acts, which Defendants made particular oral representations, and at what specific places and times.
>
> Plaintiffs do not provide information regarding which Defendants signed the membership agreements, what the terms of the agreements are, or the time or place of contracting.
>
> Importantly, with the exception of Plaintiff Seavey, the Complaint does not provide any details regarding occasions when the named Plaintiffs attempted to take advantage of the supposed benefits of travel club membership.  This Court, and the Defendants, have no indication from the Complaint whether, and in what manner, each of the named Plaintiffs aimed to avail themselves of free rewards and discounts offered by which Defendants, and the response, if any, such Defendants gave.
>
> . . . .
>
> Plaintiffs have failed to specifically plead the details surrounding alleged

15

> violations of mail and wire fraud, and the content of the alleged misrepresentation causing Plaintiff's claimed injuries . . . . These deficiencies require that Plaintiffs' RICO claim against the Travel Club Defendants be dismissed, without prejudice.
>
> Moreover, Plaintiffs simply have not alleged that the Credit Card Defendants and Bluegreen Club engaged in any of the above mentioned racketeering activity. Plaintiffs' substantive RICO claim is dismissed, without prejudice, against the Credit Card Defendants and Bluegreen Club for this same reason.

(Id. at 17-19.)

This Court later noted that "it appears that Plaintiffs substantially increased the specificity of some of their allegations" but required Plaintiffs to file a RICO Case Statement to supplement the pleadings. (October 12, 2010 Opinion at 7; Doc. No. 118.) After consideration of the Second Amended Complaint and RICO Case Statement, the Court concludes that Plaintiffs have not met the heightened pleading requirement in this second opportunity to plead and therefore, the Court grants the motions to dismiss with prejudice.[6] Plaintiffs, in their opposition brief, concede that they have been unable to amend to meet certain standards Judge Greenaway specifically announced they must meet. Plaintiffs argued that they "simply do not know who was responsible for the mailings or who was responsible for taking their phone calls, and cannot be expected to without discovery. All they know is that they called the numbers provided and were told to show up at the offices of an entity owned and operated by Daryl Turner, where they were sold a worthless travel club membership." (Pls.' Br. at 17; Doc. No. 113.) To be sure, Plaintiffs also did not allege with specificity which defendants made "false promises of free rewards" (Second

---

[6] Certain individuals named as defendants in the caption of the Second Amended Complaint have not filed a motion to dismiss. The following individuals are named as defendants but they have not filed any documents and no appearance has been entered on their behalf: Tony Marineli, Zach Vaihinger, Carl Savage, and Eric Shuman. Therefore, the Court will not address the adequacy of the pleadings as applied to these individuals.

16

Amended Compl. at ¶¶ 65-71) or which defendants made "misrepresentations regarding the value of the Travel Club memberships" (id. at ¶¶ 72-88).[7]

Case law is clear that the pleading itself as it relates to the allegations of predicate offenses based on fraud must meet the heightened pleading standard. Lum, 361 F.3d at 223 (citing Saporito v. Combustion Eng'g, Inc., 843 F.2d 666, 673 (3d Cir. 1988), vacated on other grounds, 489 U.S. 1049 (1989)). Here, by lumping all defendants together and naming them as a group, each defendant has not been properly or sufficiently placed on notice of the exact nature of the claims asserted, as these claims apply to each defendant. In addition, because Plaintiffs have lumped the Travel Club Defendants together and the claims against them therefore must be dismissed, the Court concludes that as the Second Amended Complaint applies to the remaining movants, it likewise must be dismissed. Without a legally sufficient pleading as to the Travel Club Defendants, the Credit Card Defendants' legitimate businesses need not have bolstered anyone's credibility. Therefore, the Court concludes that the pleading is legally insufficient as it relates to the Credit Card Defendants. Finally, the Court concludes that Plaintiffs have not attempted to engage in discovery as it relates to this Court's personal jurisdiction over BVC, and accordingly grants BVC's Motion to Dismiss with prejudice.

Because the Court has concluded that Plaintiffs have failed to sufficiently plead the

---

[7] The lone exception is in reference to the allegation that "defendant Zach Vaihinger told the Pribush plaintiffs that they could obtain a five (5) day, four (4) night stay in a five star hotel in London, England for $575, airfare included. After purchasing her membership in defendant Dream Vacations International, plaintiff Pribush learned from an agent or employee of the Travel Club Defendants that those accomodations are not available at that price, and that taxes alone will cost $575." (Second Amended Compl. at ¶ 85.) As noted above, supra n.6, defendant Vaihinger has not appeared in this action, is not a party to the instant motions and therefore the Court will not address the adequacy of the pleadings as to him.

underlying predicate acts, the Court concludes that the Civil RICO claim as it applies to all defendants must fail. In addition, because the substantive Civil RICO claim has been dismissed with prejudice, the Court likewise will dismiss Plaintiffs' claim pursuant to 18 U.S.C. § 1962(d), as such a claim requires that the underlying charge related to 18 U.S.C. § 1962(c) be properly asserted, and as the Court has held, the underlying substantive charge has not been sufficiently pled against these defendants. Lum, 361 F.3d at 227 n.5 (quoting Lightening Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1192 (3d Cir. 1993)).

Here, Plaintiffs have filed a Complaint, an Amended Complaint, and a Second Amended Complaint – which only made technical changes – and a Civil RICO Case Statement. Therefore, the Court determines that having had at least two opportunities to plead their claims and an opportunity to supplement their pleading with a Case Statement, the Court will not permit Plaintiffs to file their Civil RICO claims in this Court again on these facts against these defendants. The Court concludes that the pending Motions to Dismiss with regard to the Civil RICO claims are granted, and these Civil RICO claims are dismissed with prejudice.

The Court therefore addresses the state law claims set forth in the Second Amended Complaint, including fraud and deceit, negligent misrepresentation, and for the imposition of a constructive trust. (Second Amended Compl. at ¶¶ 109-131.)  Pursuant to 28 U.S.C. § 1367(c), a district court has discretion to decline supplemental jurisdiction over a claim if: (1) "the claim raises a novel or complex issue of State law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) "the district court has dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In light of this statutory grant of

discretion, having dismissed all federal law claims, this Court declines to exercise supplemental jurisdiction over the Plaintiff's claims asserted pursuant to state law.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are granted with prejudice. An appropriate form of order accompanies this opinion.

Dated: May 6, 2011

                                                    s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.